DENNIS S. RYAN *vs.* CITY OF BOSTON.

Suffolk. November 17, 1909. — January 13, 1910.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Boston*, Acting mayor, Superintendent of streets. *Contract*, Validity. *Statute*, Repeal. *Pleading, Civil*, Answer. *Words*, " Act as mayor."

The provision of St. 1895, c. 449, § 1, in the revision of the charter of the city of Boston of that year, that if a vacancy in the office of mayor occurs in the last six months of the term, " the chairman of the board of aldermen shall act as mayor for the unexpired term," was not restricted nor repealed by implication by the provisions contained in R. L. c. 26, §§ 29, 30, which, " except as otherwise provided by city charters," limit the power of an acting mayor to " matters not admitting of delay."

The provision of St. 1895, c. 449, § 1, in the revision of the charter of the city of Boston of that year, that if a vacancy in the office of mayor occurs in the last six months of the term, " the chairman of the board of aldermen shall act as mayor for the unexpired term," gives to such an acting mayor the power to

perform all the duties of the office of mayor as defined by the charter, and he accordingly has authority to approve a contract for the construction of a sewer for which the necessity is not immediate.

Under St. 1885, c. 266, § 6, and St. 1890, c. 418, § 6, although the superintendent of streets of the city of Boston is authorized to make a contract in behalf of the city for the construction of a sewer for a price less than $2,000 without the approval in writing of the mayor, if in his judgment such a course is advisable, he is not required to act thus independently, and may make a contract for a price less than $2,000 in such a form that its validity depends on the mayor's approval in writing.

In an action against the city of Boston for the breach of an agreement in writing for the construction of a sewer, which was made with the plaintiff by the superintendent of streets of the defendant in the month of December and was approved lawfully in writing by the acting mayor, the defendant, under an answer containing a general denial and an allegation of payment, cannot set up the defense that the superintendent of streets did not comply with the requirement of St. 1903, c. 268, § 1, by filing in the registry of deeds before beginning the work a statement approved by the mayor of his intention to construct a sewer, and did not comply with the requirement of St. 1891, c. 323, § 13, which by amendments includes the construction of sewers, by filing a certificate in writing approved by the mayor that public necessity required the work to be done after the fifteenth of November in that year.

CONTRACT against the city of Boston for the alleged breach of a contract in writing, by which the plaintiff agreed to lay for the defendant five hundred and seventy-five linear feet of sewer pipe in Walk Hill Street, in that part of Boston called West Roxbury, for the prices set out in a proposal submitted to the deputy superintendent of the sewer division of the street department of the defendant on December 4, 1905, the cost of the labor and materials to be furnished by the plaintiff being estimated by the city engineers as $1,960. Writ in the Municipal Court of the City of Boston dated February 10, 1908.

The defendant's answer consisted of a general denial and an allegation of payment.

On appeal to the Superior Court the case was tried before *Crosby*, J.   It appeared that the contract was signed on December 22, 1905, by the plaintiff and by James Donovan, the superintendent of streets of the city of Boston, and was approved by Daniel A. Whelton while acting as mayor of the city of Boston, its form being approved by Thomas M. Babson, Esquire, the corporation counsel.

On December 26, 1905, the plaintiff began the work of excavating, and continued to work under the contract until January 4, 1906, when the newly elected mayor, John F. Fitzgerald,

and the acting superintendent of streets, one Logue, ordered the work stopped by a notice which also stated that the street would be put in condition by the city at the expense of the plaintiff, as the contract under which he was working was illegal because the acting mayor possessed the powers of mayor only in matters not admitting of delay.

The plaintiff asked the judge to give to the jury the following instructions:

" 1.  The jury are instructed that the superintendent of streets had authority to make a binding contract with the plaintiff without the approval of the mayor where the amount involved does not exceed $2,000 and since the estimated cost of the labor and materials to be furnished by the plaintiff under this contract was less than $2,000 the jury may disregard the signature of the acting mayor and also the question of whether or not he was acting within his rights in signing this contract.

" 2.  There is a presumption of right acting by the mayor until the contrary is shown.

" 3.  The plaintiff is entitled to recover as damages the amount paid out for labor and materials and the difference between the amount it would cost him to complete the contract and the contract price.

" 4.  The plaintiff is entitled to interest on any amount it may find him entitled to recover from the time fixed in the contract when the work was to be completed."

The judge refused to make any of these rulings.  He ruled that as a matter of law the plaintiff was not entitled to recover, and ordered a verdict for the defendant.  The plaintiff alleged exceptions.

*D. V. McIsaac*, for the plaintiff.

*G. A. Flynn*, for the defendant.

BRALEY, J.  If the city of Boston became bound by the contract, the plaintiff, having been prevented from full performance by the defendant's repudiation and interference, can recover damages for the breach.  *Clark* v. *Gulesian*, 197 Mass. 492. *Moffat* v. *Davitt*, 200 Mass. 452.

The agreement is signed in behalf of the city by the superintendent of streets, and approved by " Daniel A. Whelton, acting Mayor."  The defense rests upon the ground, that the approval

having been unauthorized, the contract is void. Section 29 of R. L. c. 26 provides for the discharge of the duties of the office where the mayor is absent, or becomes incapacitated, or a vacancy occurs by resignation or death. · But the powers of an acting mayor are expressly limited by § 30 to matters requiring immediate action. If this limitation is applicable to the defendant, the contract is invalid, as it does not appear there was any urgent public necessity for the construction of the sewer. Before the enactment of the revision, the charter of the defendant was amended by St. 1895, c. 449, § 1. This act not only lengthened the tenure of office, but further provided that "in case of a vacancy in the office of mayor, the city council shall, if such vacancy occurs before the last six months of said term, order an election for a mayor to serve for the unexpired term, and if such vacancy occurs in the last six months of the term, the chairman of the board of aldermen shall act as mayor for the unexpired term." The defendant, while conceding that, a vacancy having occurred in the last six months of the term, Daniel A. Whelton, the chairman of the board of aldermen, was empowered by the charter to act for the unexpired time, contends that the scope of his duties was defined by R. L. c. 26, § 30. It is a general rule that statutes, where possible, are to receive such a construction as will give them full effect. It was within the power of the Legislature to have made the revision applicable to all cities, but this was not done, and the exception by § 29 of cities whose charters otherwise provided removes all ground for argument that there was a repeal by implication. By the amended charter ample provisions were made for filling a vacancy if one occurred, and if the powers of the chairman of the board upon succession are not specifically enumerated, they are designated by the phrase that he "shall act as mayor." The legislative intention having been unambiguously expressed is to be accorded full recognition, and these words are to be given their ordinary acceptation. To "act as mayor," is to perform all the duties of the office as defined by the charter, and the general and special laws applicable to the administration of the municipal affairs of the city. It is unquestioned that, if the contract had been approved by his predecessor, the approval would have been binding. And, as Whelton came into office by a statutory succession which

conferred upon him the right to exercise all its functions, the defendant cannot repudiate his action.

The plaintiff also contends that the contract was valid without the mayor's approval. If, however, by the St. of 1885, c. 266, § 6, and St. of 1890, c. 418, § 6, the superintendent of streets is authorized to contract for building a sewer, where the amount involved neither equals nor exceeds $2,000, he is not required to act independently. If in his judgment such a course is advisable, the validity of the contract may be made to depend upon its written acceptance by the mayor. The plaintiff does not even suggest that he has been misled, or that any mistake was made, and the rights of the parties must be determined by their written agreement, of which the mayor's approval forms an essential element.

But, if there was no error in refusing the plaintiff's first request, and the third and fourth requests correctly stated the measure of recovery, the defendant relies on St. of 1903, c. 268, § 1, and St. of 1891, c. 323, § 12, as amended by St. of 1902, c. 521, § 1, in justification of the order which rendered a continuance of the work impossible. We express no opinion, however, upon these questions as they are not before us. If under St. of 1903, c. 268, § 1, where the superintendent of streets, or other officer by appointment of the mayor, constructs the sewer, he shall file in the registry of deeds before beginning the work notice of his intention, naming the street or otherwise describing the land in which it is to be laid, and if by § 13 of St. 1891, c. 323, which by amendments includes the construction of sewers, the superintendent of streets "shall not do, or permit to be done, any of the work described in any year after the fifteenth day of November, unless he certifies, in a writing approved by the mayor and kept on file in the office of said superintendent, that public necessity requires the work to be done," this defense has not been pleaded. It is not open under an answer which contains only a general denial, with a plea of payment. *Kidder* v. *United Order of the Golden Cross,* 192 Mass. 326, 336, 337, and cases cited.

The ruling that the action could not be maintained was wrong, and the exceptions must be sustained.

*So ordered.*